## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS AMARILLO DIVISION

FILED - USDC - NDTX - AM
JAN 12 2026 PM 2:04

| | | |
|---|---|---|
| (1) MICHAEL KEVIN GUYMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| vs. | ) | |
| | ) | |
| (1) CARSON COUNTY, a political | ) | |
| subdivision of Texas | ) | **2-26 CV-007-Z** |
| (2) LUKE MCLEAN INMAN, in his | ) | |
| official capacity, | ) | |
| (3) COY TEICHELMAN, in his | ) | |
| Individual and official capacity, | ) | |
| | ) | |
| | ) | ATTORNEY LIEN CLAIMED |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## PETITION

1. COMES NOW, the Plaintiff Michael Guymon (hereinafter, "Plaintiff," "Mike," "Mike Guymon," or "Mr. Guymon"), and for his Complaint against Defendants, alleges and states as follows:

### INTRODUCTORY STATEMENT

2. Plaintiff Mike Guymon was born in Newport Beach, California, and raised in Irvine, California.

3. Mike is a former professional mixed martial artist (MMA, hereinafter) who fought for fourteen years, under different MMA promotions including the Ultimate Fighting Championship, (UFC), Bellator MMA, King of the Cage, British Association of Mixed Martial Arts and other's during his career.

4. For approximately 10 years during Mike's MMA career, he trained many law enforcement officers, including the U.S. Marshalls Service, U.S. Secret Service, Sheriff's Offices, SWAT teams and other forms of law enforcement.

1

5. His strong support, past experiences and excellent reputation among law enforcement are what led him to develop and start MX2 Global Protection (hereinafter, MX2), a private security services company.

6. On or about May 1, 2023, Mike flew from California to North Carolina to pick up and transport a backpack to California for a client. Mike rented a car in North Carolina and began the drive to California.

7. However, that was not to be. On May 2, 2023, at approximately 9:00 am., Mike was stopped in Carson County, Texas, while traveling on Interstate 40. The stop was initiated by Coy Teichelman, who was acting in the capacity of a District Attorney Investigator for the 100th District Attorney's Office, for allegedly traveling 79-miles-per-hour in a 75-miles-per-hour zone. At the time of the stop and subsequent arrest, Mr. Teichelman was not acting as a member of any recognized branch of law enforcement.

22. Mr. Guymon was originally only stopped for a warning; however, the stop escalated to the rental car being searched, and Mr. Guymon and the currency he was traveling with being seized. Mr. Guymon was then arrested for Money Laundering with funds valued at $30,000 or more but less than $150,000, a third degree Texas Felony. Mr. Guymon was, however, innocent. Indeed, there was not sufficient evidence or probable cause to arrest or establish probable cause that Mr. Guymon knowingly possessed the proceeds of criminal activity. Nevertheless, DA Investigator Coy Teichelman persisted in pursuing the criminal charges against Mr. Guymon.

23. Under the threat of losing his business, professional licensing and hard-earned reputation, Mr. Guymon agreed to enter into a Pre-Trial Diversion agreement.

24. As a result of the looming false charges and unconstitutional actions of Defendants Carson County, Luke Inman, and DA Investigator Coy Teichelman, Mr. Guymon suffered profound

personal and financial harm. He lost $121,180.00 in lawfully possessed currency and his personal and business reputation were significantly harmed.

25. Mr. Guymon has initiated this action an effort to bring some semblance of justice to egregious violation's of his civil rights. It is his hope that this lawsuit will expose the truth of his plight and prevent law enforcement from wrongfully accusing citizens of serious crimes and wrongfully seizing innocent citizens property without sufficient evidence.

## JURY DEMAND

8.  Pursuant to the Seventh Amendment of the United States Constitution, Mr. Guymon request a jury on all issues and claims set forth in the Complaint.

## PARTIES

9.  Plaintiff Mike Kevin Guymon is and was at all times relevant to this Complaint a citizen and resident of the State of California. He currently resides in Orange County, California.

10. Defendant Carson County ("Carson County" or "Defendant Carson County"), Texas, is a political subdivision of the State of Texas, organized and existing under the law of the State of Texas. "We add that a county enjoys no § 1983 immunity regardless of any qualified immunity that might afforded its officials." Turner v. Upton County, 915 F.2d at 133, 136 (5th Cir. 1990). Carson County was the employer of all individuals named herein and is and was at all times relevant to this Complaint responsible for the policies, practice, and customs of the Carson County District Attorney's Office ("CCDA").

11. Defendant Luke Inman was and is the elected District Attorney for the 100th Judicial District, which includes Carson County. He is a party to the suit in his official capacity. An official-capacity suit "... is, in all respects, other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Under binding Fifth Circuit precedent, official-capacity suits

3

against a locally elected district attorney are treated as Monell municipal-liability claims requiring proof of an official policy; widespread custom; failure to train or supervise; or a final policymaker decision that was the moving force behind the constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Baker v. Putnal, 75 F.3d 190, 195-96 (5th Cir. 1996); Peña v. City of Rio Grande City, 879 F.3d 613, 621-22 (5th Cir. 2018). As the final policymaker for charging decisions, training, supervision, and disclosure practice regarding charging decisions, and disclosure practices within the District Attorney's Office, Defendant Inman's policies, customs, training failures, supervisory decisions, omissions, and prosecutorial decisions including the initiations and continuation of criminal charges without probable cause constitute official Carson County policy for 42 U.S.C. § 1983 purposes.

12. Defendant Coy Teichelman (hereinafter, "Defendant Teichelman"), a District Attorney investigator, is a resident of the State of Texas. Deputy Teichelman was at all times relevant hereto, acting under color of state law, and in the scope of his employment, as a canine handler.

## JURISDICTION AND VENUE

13. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivation of rights secured by the Fourth and Fourteenth Amendments of the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under the color of law.

14. This Court also has original jurisdiction under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly under the Fourth Amendment and/or the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

15. The Acts complained of herein occurred in Carson County, Texas. Jurisdiction and venue are proper Under 28 U.S.C. §§ 116(a) and 139 (b).

4

## FACTUAL BACKGROUND

16. Mike Kevin Guymon is a lifelong California resident and the founder and operator of MX2 Global Protection (Herein after, MX2), a private security services company. His professional background includes extensive experience in security logistics and confidential transport services. As part of his business, Mr. Guymon is routinely retained to retrieve and transport large sums of cash for clients due to his reputation in the private security services industry.

17. In late April 2023, and consistent with the services he provides through MX2 Global Protection, Mike was retained by a client to retrieve a black backpack containing a large sum of cash from North Carolina and back to California. The assignment fell within the scope of MX2's regular services provided and did not involve any illegal or unusual activity.

**Retrieval Assignment and Return Travel to California**

26. On or about May 1, 2023, Mr. Guymon traveled by commercial airline from California to North Carolina to retrieve the backpack. He rented a vehicle in Charlotte, North Carolina, and elected to drive back to California while transporting the backpack. Mr. Guymon was accompanied at the outset of the return trip by his girlfriend, as he had planned to use the drive as an opportunity to spend time with her and briefly step away from the day-to-day pressures of operating a business with approximately fifty employees.

27. Shortly after beginning the drive, however, Mr. Guymon and his girlfriend engaged in ongoing verbal disputes that continued for several hours and materially disrupted the trip. Although Mr. Guymon had initially intended to make stops along the way, including in Nashville, Tennessee, the continuing conflict caused him to abandon those plans and continue driving. In an effort to restore peace and complete the journey, Mr. Guymon ultimately dropped his girlfriend off at the Oklahoma City airport, which was along his westbound route on Interstate 40.

5

28. By the time he reached the Texas Panhandle, Mr. Guymon had been driving for many hours and was fatigued. His objective at that point was simply to continue west and return home to California so that he could attend to his business responsibilities.

**Traffic Stop and Warrantless search pursuant to revenue-drive forfeiture customs on Interstate 40 in Carson County, Texas**

29. However, his return home was interrupted. At approximately 9:00 a.m. on May 2, 2023, while traveling westbound on Interstate 40 through Carson County, Texas, Mr. Guymon was stopped by Coy Teichelman. At the time of the stop, Mr. Teichelman was acting in his capacity as an investigator for the 100th Judicial District Attorney's Office, under the supervision of District Attorney Luke Inman.

30. According to Defendant Teichelman's incident report, he was patrolling Interstate 40 not for routine traffic enforcement, but for the purpose of conducting highway interdiction and making bulk currency seizures derived from alleged illegal activity. Mr. Teichelman stated that the stop was initiated because Mr. Guymon was allegedly traveling seventy-nine miles per hour in a seventy-five-mile-per-hour zone and had failed to signal during a lane change.

31. At all relevant times, Defendant Coy Teichelman was employed as an investigator by the 100th Judicial District Attorney's Office and acted under the authority, supervision, and control of the elected District Attorney, Defendant Luke Inman. Defendant Teichelman was not a member of the Texas Department of Public Safety, the Carson County Sheriff's office, or any independent law enforcement agency, and did not operate under a separate or autonomous law enforcement chain of command.

32. Defendant Teichelman exercised law-enforcement powers—including traffic stops, detentions, searches, seizures, arrests, and the initiation of criminal proceedings—pursuant to authority

6

delegated to him through his employment with the District Attorney's Office, and not through any independent commission or external law-enforcement appointment.

33. Defendant Teichelman's interdiction activities on Interstate 40, including highway stops targeting suspected bulk currency transport and seizure of property for forfeiture, were undertaken as part of CCDA's Office's operation practices and enforcement objectives, and were conducted in furtherance of the Office's prosecution driven and revenue-driven forfeiture-related policies and practices.

34. At the time of Plaintiff's stop and arrest, there existed no meaningful institutional separation between the District Attorney's prosecutorial functions and the investigative and enforcement activities carried out by Defendant Teichelman on behalf of the District Attorney's Office, such that in the same office directing investigations, effectuating seizures, and pursing criminal and forfeiture proceedings arising from those investigations.

35. DA Investigator Teichelman approached the passenger side of the vehicle, informed Mr. Guymon of the reason for the stop, and engaged him in a friendly conversation. He advised Mr. Guymon that he would receive only a warning and would be free to leave. Mr. Guymon apologized for any inadvertent traffic infraction and explained that he had been driving for an extended period. In his incident report, Mr. Teichelman noted that Mr. Guymon appeared tired, stressed, and depressed, and that he explained he had experienced a difficult road trip due to a dispute with his girlfriend that had resulted in her being dropped off at an airport in Oklahoma.

36. Despite stating that the stop would result only in a warning, Defendant Teichelman asked Mr. Guymon to sit in the patrol vehicle while the warning was prepared. While seated in the patrol car, Mr. Guymon was questioned extensively regarding his travel route, timeline, and personal circumstances. Mr. Guymon answered questions to the best of his ability, explaining the recent

disruption to his trip. At times, he stated that he did not recall specific details, which Defendant Teichelman later characterized as suspicious in his report, despite also acknowledging Mr. Guymon's fatigue and stress.

37. Defendant Teichelman further noted that Mr. Guymon did not appear nervous during the encounter, which he also characterized as suspicious, and he interpreted Mr. Guymon's demeanor as annoyance rather than attributing it to the circumstances of the prolonged detention and questioning. Mr. Teichelman additionally concluded that Mr. Guymon had sufficient travel time to be in Carson County, a conclusion consistent with Mr. Guymon's explanation regarding altered travel plans, extended driving, and necessary stops.

38. While Mr. Guymon remained seated in the patrol vehicle, Defendant Teichelman continued questioning him regarding his travel and itinerary. Defendant Teichelman then requested consent to search the vehicle, which Mr. Guymon denied. Thereafter, Mr. Teichelman deployed a narcotics-detection canine, Kobra, to conduct a free-air sniff around the exterior of the vehicle. Defendant Teichelman alleged that the canine indicated the presence of an illegal substance. Relying on that assertion, Defendant Teichelman proceeded to conduct a warrantless search of the vehicle.

39. During the search, Defendant Teichelman discovered a black backpack containing a large amount of United States currency. No drugs, drug residue, paraphernalia, weapons, or other contraband were discovered. Defendant Teichelman nevertheless alleged that he detected a "strong odor of [cannabis]" upon opening the backpack. The currency, backpack, and associated packaging were seized.

40. Mr. Guymon was then placed under arrest and booked into the Carson County Jail on a charge of Money Laundering. No warrant was obtained prior to the arrest.

**Mr. Guymon's Pre-Trial Division Due to Arrest**

41. Following his arrest, Mr. Guymon was under the threat of being prosecuted for Money Laundering involving funds alleged to be valued between $30,000 and $150,000. Mr. Guymon consistently maintained his innocence and denied any involvement in criminal activity.

42. During pretrial proceedings, it was disclosed that the seized currency had been deposited into a bank account and that the backpack and all associated packaging materials had been discarded, rendering them unavailable for forensic examination or evidentiary testing. Despite the absence of preserved physical evidence, the State continued to pursue criminal prosecution and initiated forfeiture proceedings to retain the seized funds.

43. Facing the potential loss of his business, professional standing, and livelihood, Mr. Guymon entered into a Pre-Trial Diversion Agreement. He did so without admitting guilt and under the pressure of avoiding prolonged criminal prosecution. Upon successful completion of the diversion program, although a criminal case was never filed, it was dismissed and therefore may not be initiated.

44. As a result of the arrest, seizure, and threatened prosecution, Mr. Guymon suffered significant financial loss, including the deprivation of approximately $121,180 in lawfully possessed currency, as well as reputational harm, emotional distress, and disruption to his professional and personal life.

### WRONGFUL / UNREASONABLE ARREST / SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION
### (Pursuant to 42 U.S.C. § 1983)

45. Plaintiff re-alleges and incorporates all previous paragraphs herein by reference.

46. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons...
   against unreasonable... seizures, shall not be violated, and no warrants shall issue, but upon
   probable cause..."

47. Plaintiff Mike Guymon was seized within the meaning of the Fourth Amendment when Defendant
   Coy Teichelman placed him under arrest following a traffic stop on Interstate-40 in Carson
   County, Texas. At that moment a reasonable person in Plaintiff's position would not have felt
   free to leave, and Plaintiff's liberty was restrained by a show of official authority.

48. The seizure of Plaintiff's person was unreasonably and unconstitutional because it was not
   supported by probable cause.

49. Probable cause to arrest exists only when, at the time of the arrest, the facts and circumstance
   known to the officer would lead a reasonable person to believe that the arrestee has committed,
   is committing, or is about to commit a criminal offense.

50. At the time Defendants seized Plaintiff, no such facts existed.

51. Plaintiff denied consented to a search of his vehicle. The search revealed no drugs, paraphernalia,
   residue, ledgers, weapons, scales or contraband indicative of illegal drug activity. The only
   putative evidence Defendants alleged linking Plaintiff to any criminal activity was  discarded,
   rendering them unavailable for forensic examination or evidentiary testing.

52. Plaintiff provided consistent, lawful, and non-evasive explanations regarding his travel, and the
   purpose of his trip. Defendants did not observe furtive gestures, attempts to conceal evidence,
   false statements, or conduct indicative of criminal activity.

53. After asserting that a that a narcotics-detection canine had alerted to the backpack, the currency,
   and the associated packaging materials, Defendants arrested Plaintiff despite the absence of drugs,
   drug residue, paraphernalia, weapons, ledgers, scales, or any other corroborating evidence linking

Plaintiff or the currency to criminal activity, and despite Plaintiff's consistent, lawful explanations and non-suspicious conduct.

54. Defendants' own statements and conduct reflected that the seizure of Plaintiff's person was effectuated and pursuant to customary interdiction and revenue-driven forfeiture practices, rather than an individual assessment of probable cause.

55. Accordingly, there were no facts or circumstances within Defendants' knowledge, nor any reasonable trustworthy information, sufficient to warrant a prudent person in believing that Plaintiff had committed the offense of Money Laundering or any other criminal offense at the time of the arrest.

56. Defendants nevertheless effectuated a warrantless arrest without probable cause, in violation of Plaintiff's clearly established rights under the Fourth Amendment.

57. This unreasonable seizure was the direct and foreseeable result of Carson County's and Carson County District Attorney's Office's interdiction and revenue-driven-focused policies, customs, training deficiencies, and ratification of unconstitutional seizure practices, as more fully alleged in the *Monell* section below.

58. As a direct and proximate result of Defendants' unconstitutional seizure, Plaintiff suffered substantial damages, including but not limited to: loss of liberty; unlawful detention; loss of property; economic loss; lost business income and opportunities; attorney's fees and legal expenses; reputational harm; humiliation; emotional distress; mental anguish; pain and suffering; and other damages alleged herein.

**MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENT(S) TO THE UNITED STATES CONSTITUTION (Pursuant to 42 U.S.C. § 1983)**

59. Plaintiff re-alleges and incorporates all previous paragraphs herein by reference.

60. Defendants Luke Inman and Coy Teichelman acting under color of state law and within the scope of their employment with Carson County District Attorney's Office and/or Carson County, initiated, caused and continued the criminal proceedings against Plaintiff by arresting him without probable cause, and preparing, executing, and submitting a materially false, incomplete, and misleading Probable Cause Affidavit to the District Attorney's Office and the Court.

61. While Plaintiff remained detained in the patrol vehicle, DA Investigator Coy Teichelman conducted an open-air canine sniff on the Plaintiff's vehicle. The canine allegedly alerted at the driver's side door, which Defendant Teichelman then used as a justification to conduct a warrantless search. The search yielded only a backpack of currency which, Defendant Teichelman claimed emitted an "odor of [cannabis]" upon opening it. No drugs, paraphernalia, ledgers, residue, weapons, or contraband were discovered during the search. The alleged backpack, currency, and associated packaging were not preserved by the State.

62. The criminal proceedings against Plaintiff were terminated without a conviction and without and adjudication of guilt. Plaintiff entered into and successfully completed a Pre-Trial Diversion Agreement without admitting guilt, and therefore prosecution was dismissed and cannot be initiated. Plaintiff entered the diversion agreement under duress and fear of losing his professional licensing, business, and reputation—not because probable cause existed.

63. Defendants' actions deprived Plaintiff of clearly established rights under the Fourth Amendment, including the right to be free some seizure pursuant to legal process unsupported by probable cause and the right not to be prosecuted based on false, fabricated or materially incomplete evidence.

64. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff was unlawfully arrested, wrongfully prosecuted, compelled to complete a Pre-Trial Diversion Agreement

unsupported by probable cause, and suffered substantial economic losses, lost business opportunities, reputational harm, emotional distress, humiliation, and other damages described herein.

### Malicious Prosecution Under Texas Common Law

65. Plaintiff re-alleges and incorporates all previous paragraphs herein by reference.

66. This claim is brought pursuant to Texas common law against Defendants Luke Inman and Coy Teichelman, each of whom acted willfully, knowingly, and maliciously, and without probable cause in initiating, procuring, or continuing a criminal prosecution against Plaintiff.

67. Texas law recognizes the tort of malicious prosecution and provides a cause of action where a criminal proceeding is initiated or procured without probable cause and with malice, later terminated in the accused's favor. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997); *Armstrong v. Ashley*, 60 S.W.3d 883, 886-87 (Tex. App.- Amarillo 2001, no pet.).

68. Defendant Coy Teichelman initiated and procured the criminal prosecution against Plaintiff by:

   a. arresting Plaintiff without probable cause;

   b. asserting a nonexistent criminal nexus between Plaintiff and narcotics activity where none existed; and

   c. providing false, misleading, and materially incomplete information to prosecutors and the Court, including the omission of exculpatory facts.

69. Texas law defines malice in the malicious-prosecution context as "conduct motivated by ill will, wrongful or evil motive, or undertaken in reckless disregard of the rights of another". *Richey*, 952 S.W.2d at 517. The facts alleged herein demonstrate that Defendants acted with malice, including by proceeding with prosecution despite knowing that probable cause was lacking and that material exculpatory information has been withheld.

13

70. As a direct and proximate result of Defendants' malicious conduct, Plaintiff was wrongfully arrested, wrongfully prosecuted, and compelled to complete a Pre-Trial Diversion Agreement unsupported by probable cause.

71. Defendants DA Luke Inman and DA Investigator Coy Teichelman are individually and/or officially liable for these torts under Texas law. Governmental immunity under the Texas Tort Claims Act does not shield individual employees from liability for intentional torts such as malicious prosecution. Tex. Civ. Prac. & Rem. Code § 101.057(2).

72. Accordingly, Plaintiff seeks judgment against Defendants Carson County, District Attorney Inman and DA Investigator Coy Teichelman for all damages available under Texas law, including actual damages, mental-anguish damages, reputational damages, economic damages, exemplary damages, costs of suit, and all other relief to which Plaintiff is entitled.

### *Monell* Liability
### (Pursuant to 42 U.S.C. § 1983)

73. Plaintiff re-alleges and incorporates all previous paragraphs herein by reference.

74. There is an affirmative causal nexus between the violation of Plaintiff's Fourth and Fourteenth Amendment rights and established policies, practices, customs, failures to train, failures to supervise, and ratifications maintained by Carson County and/or the Carson County District Attorney's Office, including its customary interdiction and revenue-driven forfeiture practices. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

75. Under Texas law, the District Attorney is the final policymaker for matters involving prosecutorial administration, investigative practice, charging policies, evidentiary review, training, supervision, and discipline within the District Attorney's Office, including the conduct

of district attorney investigators acting on behalf of the State and the County in customary interdiction and revenue-driven forfeiture practices.

76. At all relevant times, Defendant Luke Inman, as the elected District Attorney for the 100th Judicial District of Texas, including Carson County, acted as the final policymaker for the administrative, investigative, supervisory, and training functions of the Carson County District Attorney's Office, including oversight of customary interdiction and revenue-driven forfeiture practices.

77. Because the District Attorney is Carson County's final policymaker for these functions, his decisions, failures, omissions, ratifications, and training deficiencies—including those relating to customary interdiction and revenue-driven forfeiture practices—constitute official County policy for purposes of § 1983 municipal liability. *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996); *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).

78. Thus, any unconstitutional customs, patterns, interdiction practices, seizure practices, forfeiture practices, or documentation practices—including customary interdiction and revenue-driven forfeiture practices—originating from the District Attorney or tolerated by him are legally attributable to Carson County under *Monell. Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

79. Carson County, acting through the District Attorney's Office, routinely participated in and exercised administrative and supervisory oversight over criminal investigations, including those initiated by district attorney investigators such as Defendant Coy Teichelman, arising from customary interdiction and revenue-driven forfeiture practices. This oversight included review of probable-cause affidavits, evaluation of evidentiary sufficiency, charging decisions, forfeiture decisions, and the continuation of prosecutions.

80. The Carson County District Attorney's Office maintained policies, customs, and practices of initiating and continuing criminal prosecutions without probable cause by relying on materially incomplete, misleading, or fabricated investigative narratives generated through customary interdiction and revenue-driven forfeiture practices, while failing to require meaningful verification of facts, correction of false affidavits, or disclosure of exculpatory information.

81. The District Attorney's Office further maintained a policy, custom, or practice of purporting to conduct good-faith evidentiary review and prosecutorial screening, when in fact it routinely conducted no meaningful investigation into the factual basis for arrests, seizures, or interdiction-based prosecutions arising from customary interdiction and revenue-driven forfeiture practices. Despite this, prosecutors represented to courts that charges were supported by probable cause and admissible evidence.

82. In exercising these administrative, supervisory, and investigative functions related to customary interdiction and revenue-driven forfeiture practices, the District Attorney's Office acted deliberately, recklessly, or with deliberate indifference to the constitutional rights of criminal defendants, including the right to be free from prosecution unsupported by probable cause and the right to due process of law.

83. These practices—including customary interdiction and revenue-driven forfeiture practices—were widespread, persistent, and well-established before and during Plaintiff's prosecution. They were carried out by the District Attorney's Office and persisted with Defendant Inman's actual or constructive knowledge, ratification, and acquiescence.

84. As demonstrated in Plaintiff's case, prosecutors proceeded with criminal charges generated through customary interdiction and revenue-driven forfeiture practices despite:

   a. the complete absence of narcotics, contraband, or forensic evidence;

16

    b.  the lack of any preserved physical evidence supporting criminal activity;

    c.  lawful and consistent explanations for the currency;

    d.  materially misleading probable-cause affidavits; and

85. Despite these deficiencies, the District Attorney's Office failed to terminate the prosecution, correct false narratives, or intervene to prevent an unconstitutional prosecution arising from customary interdiction and revenue-driven forfeiture practices.

86. Taken together, Defendants' reliance on materially incomplete and misleading probable-cause affidavits, the failure to correct or withdraw those affidavits, and the continued initiation and ratification of criminal revenue-driven forfeiture proceedings despite obvious evidentiary deficiencies support a reasonable inference that these constitutional violations were not isolated incidents but occurred pursuant to inadequate training, supervision, and established practices within the Carson County District Attorney's Office.

87. Defendant Inman, as a final policymaker, had actual notice that the District Attorney's Office routinely relied on interdiction profiles, speculative testimony, and incomplete affidavits generated through customary interdiction and revenue-driven forfeiture practices in initiating and sustaining prosecutions. Despite this notice, he ratified the lack of training, supervision, discipline, and corrective measures within the District Attorney's Office.

88. To the extent any policies governing prosecutorial review, disclosure obligations, or evidentiary sufficiency existed, Defendant Inman had actual or constructive notice that such policies were routinely ignored or unenforced in cases arising from customary interdiction and revenue-driven forfeiture practices. These deficiencies posed an obvious and substantial risk of wrongful prosecution and deprivation of liberty.

89. . With deliberate indifference to the rights of criminal defendants, Defendant Inman and Carson County chose not to adopt, implement, or enforce minimally adequate safeguards to ensure that prosecutions arising from customary interdiction and revenue-driven forfeiture practices were supported by probable cause and constitutionally sufficient evidence.

90. The unconstitutional policies, customs, and practices of the District Attorney's Office—including its customary interdiction and revenue-driven forfeiture practices—were the moving force and "but for" cause behind Plaintiff's wrongful prosecution and resulting damages, thereby subjecting Carson County to liability under *Monell*, 436 U.S. at 658.

91. When a final policymaker fails to investigate, discipline, or correct unconstitutional conduct by investigators acting under his authority in connection with customary interdiction and revenue-driven forfeiture practices, such inaction constitutes ratification and an official County policy for purposes of § 1983 liability.

92. This case fits squarely within the narrow range of circumstances recognized in *City of Canton v. Harris*, 489 U.S. 378 (1989), where a pattern of prior violations is unnecessary because the need for training is so obvious and the consequences of failing to provide it so highly predictable that constitutional violations are inevitable.

93. Here, Carson County armed District Attorney investigators with highway-interdiction authority, currency-seizure tactics, criminal-interdiction profiles, and customary interdiction and revenue-driven forfeiture practices, and deployed them along Interstate-40 without training them on the constitutional limits of the Fourth Amendment. The predictable result was the arrest and prosecution of law-abiding citizens without probable cause.

94. As Canton explains, when a municipality trains officials how to use powerful law-enforcement tools but fails to train them on the constitutional limits governing those tools, the resulting

18

violations are attributable to the municipality itself. *Canton*, 489 U.S. at 390; *Brown v. Bryan County*, 219 F.3d 460, 462–63 (5th Cir. 2000).

**Carson County I-40 Currency Seizure and Interdiction Customs**

95. Carson County, through the District Attorney's Office, maintained policies, practices, and customs arising from customary interdiction and revenue-driven forfeiture practices, including:

    e. treating the mere presence of currency, without drugs, contraband, corroborating evidence, or preserved physical proof, as justification to prolong detentions, conduct invasive searches, effect arrests, and initiate prosecutions;

    f. using traffic stops along Interstate-40 as a gateway to interdiction-based investigations unrelated to legitimate traffic safety purposes;

    g. encouraging or incentivizing currency seizures for forfeiture revenue, rather than legitimate evidence, to drive arrests and prosecutions.

96. These customary interdiction and revenue-driven forfeiture practices were closely related to, and the moving force behind, the violation of Plaintiff's constitutional rights. *Webster*, 735 F.2d at 841 (en banc).

97. The County's officials acted with deliberate indifference. In the municipal-liability context, deliberate indifference is established when the risk of constitutional violations is so obvious that policymakers should have known of it and consciously disregarded it.

98. Here, the risk created by maintaining customary interdiction and revenue-driven forfeiture practices was so obvious that it amounted to deliberate indifference to the rights of persons with whom Carson County District Attorney investigators came into contact.

99. As a direct and proximate result of these customary interdiction and revenue-driven forfeiture practices, Plaintiff suffered damages including economic loss, lost business opportunities,

19

attorney's fees, reputational harm, humiliation, emotional distress, pain and suffering, and other damages described herein.

## PRAYER FOR RELIEF

**WHEREFORE,** based on the foregoing, Plaintiff prays that this Court grant him the relief sought including, but not limited to, actual, compensatory, and punitive damages in excess of Seventy-Five Thousand Dollars ($75,000), with interest accruing from date of filing of suit, the cost of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

Respectfully Submitted,

DENNIS R. BOREN

Dennis R. Boren, TBA #02665500
4000 S. Georgia, Suite A
Amarillo, Texas 79109
P: (806) 206-8180
F: (806) 214-5943

*Attorney for Plaintiff*

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MICHAEL KEVIN GUYMON | Carson County, a politial subdivision of Texas; Carson County District Attorney Luke Inman, in his official capacity; |
| **(b)** County of Residence of First Listed Plaintiff **Orange County, Califor** *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant **Carson County, Texas** *(IN U.S. PLAINTIFF CASES ONLY)* NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* Dennis R. Boren, Attorney at Law, 4000 S. Georgia St., Amarillo, Texas 79109, (806) 206-8180 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [x] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability | [ ] 368 Asbestos Personal Injury Product | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 340 Marine | Liability | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | [ ] 360 Other Personal | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | Injury | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983 (civil action for deprivation of rights of rights under color of state law)
Brief description of cause:
Civil rights action under 42 U.S.C. 1983 for unconstitutional traffic stop, warrantless arrest, unlawful seizure of property, malicious prosecution, Mon

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 1,500,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE  Stuart Messer    DOCKET NUMBER  13061,N18-3905

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 01/12/2026 | /s/ Dennis R. Boren |

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)  Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)  County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)  Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.  Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.  Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.  Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.  Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.  Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.